LUDWIG STORTENBAKER, Appellee, v. PULLMAN &. PLUMER,.
Appellants.

**Fraudulent Conveyance:** INSUFFICIENT EVIDENCE. A creditor of a . firm obtained judgment against it for $3,500, and garnished defendants thereon, attacking as fraudulent the firm's mortgage and bill of sale of its stock, and transfer of its notes to defendant. The jury returned a verdict for $1,039.83 against defendant. *Held*, that the fact that the stock and accounts . of the firm were confessedly worth much more than the · amount of plaintiff's judgment showed that the jury had found no fraud relating to the goods and accounts and, hence, the contention that there was no evidence to support the find- · ing of fraud in the sale and mortgage was sustained.

VOLUNTARY TRANSFER OF PROPERTY TO GARNISHEE. Defendants took a note for the amount due them from a firm, and received a chattel mortgage on all its stock and accounts. The next . day, on agreement, the firm executed a bill of sale to defendants, and a contract in lieu of the mortgage for all the goods . covered thereby, agreeing in said contract to accept the property without mention of the notes, in full satisfaction of the · debt due garnishees. Certain notes due the firm were also transferred to defendants, either on the day of making the · mortgage or executing the bill of sale. *Held*, that a verdict in favor of a judgment creditor of the firm against defendants as garnishees was proper, where it did not exceed the · value of the notes so transferred, since the notes were released by the bill of sale if they were given as collateral security for the principal note, and were voluntary transfers, . if made after the sale.

**Appeal:** REVIEW: *Harmless error.* Where a verdict was mani- · festly in defendant's favor as to the issue of fraud, his objection to an instruction thereon will not be considered on. appeal.  ·

*Appeal from Mills District Court.*—HON. A. B. THORNELL, .
Judge.

SATURDAY, DECEMBER 22, 1900.

DEFENDANTS were garnished as supposed debtors of the · firm of Pullman & Hettinger. As such garnishees they filed"

answer, denying that they were indebted to said firm, or that they had any property or money of the firm in their possession. Plaintiff thereupon filed a pleading controverting the answers of the garnishees, and alleging that certain transactions between the judgment debtors and the garnishees were voluntary, fraudulent, and void, and that the garnishees did hold property belonging to the defendant. On the issues thus presented the case was tried to a jury, resulting in a verdict and judgment for plaintiff, and defendants appeal.— *Affirmed.*

*John Y. Stone* and *W. S. Lewis* for appellants.

*Sims & Blanchard* and *C. E. Dean* for appellee.

DEEMER, J.—In the year 1887 George Pullman, Jr., and John Hettinger formed a partnership to conduct a general store in the town of Silver City. The garnishees, George Pullman, Sr., and Chris Plumer, are, respectively, the father and father-in-law of George Pullman, Jr. Each of the parents gave the son $2,000 about the time he entered into the partnership arrangement. This advancement was a pure gift, and has nothing to do with the case, save as one of its side lights. At various times during the following years the garnishees made loans to the new firm, aggregating something like $20,000. On August 16, 1895, the garnishees demanded security from the firm to which they had loaned money and otherwise become obligated, and pursuant to this demand the parties met at the residence of George Pullman, Sr., where the amount of the indebtedness was computed, and an agreement reached that the amount of the liability of the firm to these garnishees was $20,451.83. A note for this amount was prepared, and a chattel mortgage executed to the garnishees, covering all the stock belonging to the firm. The mortgage also covered the accounts of the firm, and it is claimed that there was a prior

or contemporaneous agreement to transfer the notes belonging to the firm to the garnishees. Thereafter the parties repaired to the store, where the notes were indorsed and the chattel mortgage delivered. On the day following, the deputy sheriff, as agent of the mortgagees, took possession of the mortgaged property; but on consultation between all the parties it was finally agreed that the firm should execute a bill of sale and contract in lieu of the mortgage, for all the goods covered thereby, to the garnishees, transferring the title to them absolutely. This done, the garnishees took possession of the stock, and were holding all that remained, together with the uncollected notes and book accounts, at the time this action was commenced. Plaintiff, who is a creditor of the firm of Pullman & Hettinger, commenced his action, aided by attachment, on the twenty-eighth day of August, 1895, and caused the defendants to be garnished on that day. He afterwards, and before the trial of the garnishment proceedings, recovered judgment for over $3,500.

Attack is made not only on the mortgage and bill of sale, but also on the transfer of the notes, and claim is made to about $75 in money found in the cash drawer on the evening of August 17th, when the garnishees took possession under their bill of sale. The verdict found by the jury in these proceedings was for $1,039.83 As the stock of goods and the accounts were confessedly worth much more than the amount of plaintiff's judgment against the firm, it is manifest that the jury must have found there was no fraud in the transaction relating to the goods and accounts. Much of the defendants' argument on this appeal relates to this issue of fraud. They claim there was no evidence from which such a finding could be made. We are quite ready, as the jury seems to have been, to agree with them in this contention, but this does not settle the controversy. There still remained the issue regarding the transfer of the notes. On the one hand it is

contended that the notes were transferred as collateral to the main indebtedness on the sixteenth day of August, and that when the bill of sale and the contract were taken on the 17th, they were additional to the notes, which were treated as so much of a credit on the principal indebtedness; while on the other it is claimed and insisted that the notes were not turned over until the seventeenth, or, if on the sixteenth, that no credit was given therefor, and that on the seventeenth it was agreed between the parties that the property covered by the mortgage should be accepted by the garnishees in full discharge of the indebtedness of the firm to them, and that the transfer of the notes was purely voluntary. The plaintiff also claims that he is entitled to charge the garnishees with the amount of money found by them in the cash drawer. The evidence as to when the notes were turned over is conflicting, and the jury was not without evidence in finding it either the sixteenth or seventeenth. But, whatever may have been its finding on this proposition, it appears that the garnishees, in accepting the bill of sale for the goods covered by their mortgage, agreed in the same written instrument to accept the said property in full satisfaction of the indebtedness to them. At that time no credit had been made on the note representing the indebtedness, and no agreement had been reached regarding the value of the notes given the garnishees.

4    If the notes were delivered to the garnishees prior to that time, it was as collateral security for the indebtedness, and when the principal note was extinguished the securities were *ipso facto* released. If they were delivered after that time, it was on a debt that had already been extinguished, and the transfer was voluntary. The evidence tends to show that these notes aggregated on their face something like $10,000, and that they were worth from 8 to 25 per cent. of their face value. The verdict was evidently based on this theory, and, as it has support in the evidence, we cannot interfere. It may be that omission to mention the notes in the bill of sale and contract was due to oversight, and that it

was given subject to previous transfer of the notes, but that was a question for the jury. There was evidence from which a contrary conclusion may fairly have been reached, and we are not disposed to interfere. From the statement of the case it will be seen that the amount of the verdict may fairly be accounted for and sustained. Some complaint is made regarding an instruction relating to actual fraud. As the verdict was manifestly in defendants' favor on this issue, we have no occasion to consider the question, further than to say that, conceding it to have been erroneous, no prejudice resulted; but we do not think it was erroneous, as an abstract proposition, and are not prepared to hold that there was no evidence to sustain it. No prejudicial error appears, and the judgment is AFFIRMED.